# State of Tennessee

## In the Circuit Court of Hamilton County

*ADAM JEROME TATUM*
_____
**Plaintiff**

No. *13C/50*

*CITY OF CHATT ET AL*
_____
**Defendant**

# SUMMONS

TO: *CITY OF CHATT C/O PHIL NOBLETT*
_____
**Defendant**

*100 E. 11th ST. STE 200, CHATT 37402*
_____
**Address**

_____
**Defendant**

_____
**Address**

_____
**Defendant**

_____
**Address**

You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Circuit Court of Hamilton County, Tennessee in the above styled case. Your defense to this complaint must be filed in the office of the Circuit Court Clerk of Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

WITNESSED and Issued this *15* day of *January*, 20*13*

CIRCUIT COURT OF HAMILTON COUNTY
500 COURTHOUSE
625 GEORGIA AVENUE
CHATTANOOGA, TENNESSEE 37402
423/209-6700

Paula T. Thompson, Circuit Court Clerk

By _____
Deputy Circuit Court Clerk

Attorneys for Plaintiff _____

Robin R. Flores
Attorney at Law
4110-A Brainerd Rd.
Chatt., TN 37414 Address

Plaintiff's Address _____

Received this _____ day of _____, 20_____

**Defendant Copy**

/S/ _____
Deputy Sheriff

ADA COORDINATOR, FOR ASSISTANCE CALL (209-6120)

## CIRCUIT COURT FOR HAMILTON COUNTY
## STATE TENNESSEE

ADAM JEROME TATUM, §
§
*Plaintiff,* §
§
~v~ §
§
CITY OF CHATTANOOGA, §
§
CHATTANOOGA-HAMILTON §
COUNTY HOSPITAL AUTHORITY, §
d/b/a §
ERLANGER HEALTH SYSTEMS, §
§
FORMER OFFICER SEAN EMMER, §
In his official capacity as an §
agent for the City of Chattanooga §
and in his individual capacity, §
§
FORMER OFFICER ADAM COOLEY, §
In his official capacity as an §
agent for the City of Chattanooga §
and in his individual capacity, §
§
OFFICER JAMES SMITH (badge 702) §
In his official capacity as an §
agent for the City of Chattanooga §
and in his individual capacity, §
§
OFFICER JOSEPH NEIGHBORS, §
(badge 1066), §
In his official capacity as an §
agent for the City of Chattanooga §
and in his individual capacity, §
§
OFFICER MIKE WENGER, §
In his official capacity as an §
agent for the City of Chattanooga §
and in his individual capacity, §
§
and §
§
APPROXIMATELY ELEVEN UNIDENTIFIED §
AND UNKNOWN CHATTANOOGA POLICE §

No. *13C150*

**JURY DEMAND**



**DEFENDANT COPY**

~ 1 ~

| OFFICERS PRESENT AT THE INCIDENT | § |
| SCENE, | § |
| In their official capacities as | § |
| agents for the City of Chattanooga | § |
| and in their individual capacities, | § |
| | § |
| Defendants. | § |

## COMPLAINT

**Introduction:**

1.    This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of rights secured to the plaintiff by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and for violations of the Tennessee Governmental Tort Liability Act and other statutory and common law of the State of Tennessee by the defendants.

2.    Plaintiff avers that the individually named officers of the City of Chattanooga ("City") made an unreasonable seizure of the plaintiff, subjected plaintiff to cruel and unusual punishment, deprived plaintiff of his right to counsel during questioning, and unlawfully interrogated plaintiff without the Due Process of law. The officers attempted to prevent plaintiff from seeking to petition the federal and state government through civil litigation by falsely claiming plaintiff attacked and assaulted the officers.

3.    In addition, plaintiff avers that the individually named officers assaulted, battered, humiliated, and tortured the plaintiff, and these same officers assisted one another in hiding the facts of the claims stated herein.

4.    Plaintiff also maintains that the individually named officers committed these violations and torts as a result of policies, customs, and/or procedures of the City.

~ 2 ~

5.     In addition, plaintiff avers that the individually named officers subjected plaintiff to mental anguish and emotional distress, and maliciously prosecuted plaintiff by virtue of submitting false documents to the Court of General Sessions for Hamilton County, Tennessee, and by failing to disclose the entirety of the facts as reflected herein to the representative of the Office of the District Attorney General for Hamilton County and to attorney Mike Acuff. The individually named officers committed such acts and omissions to obtain a conviction against the plaintiff, which would prevent plaintiff from exercising his right to seek redress of the harm stated herein via the state and federal courts within the State of Tennessee.

**Jurisdiction and Venue:**

6.     This is an action to redress the deprivation of rights secured to the plaintiff by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution (enforceable through 42 U.S.C. § 1983) and for violations of Tennessee statutes and common law. Thus, as to the § 1983 claims, this Court is vested with original jurisdiction pursuant to the authority stated in Haywood v. Drown, 556 U.S. 729 (2009). This Court is vested with original jurisdiction over the state claims pursuant to TENN. CODE ANN. § 16-10-101, et seq.

7.     Venue is proper in this Court pursuant to TENN. CODE ANN. § 20-4-102. All acts complained of occurred within Hamilton County.

   a.  Plaintiff is a resident Hamilton County, Tennessee.

   b.  To the best of plaintiff's knowledge and belief, the individually named officers of the City, at the time of the events stated in this Complaint, are residents of Hamilton County, Tennessee.

   c.  To the best of plaintiff's knowledge and belief, the unidentified and unknowns officers of the City are residents of Hamilton County, Tennessee.

$\sim 3 \sim$

d. City is a political sub-division of the State of Tennessee.

e. Chattanooga – Hamilton County Hospital Authority ("Erlanger") is a non-profit governmental corporation registered with the Tennessee Secretary of State ("Secretary"), created by a Private Act of the legislature of the State of Tennessee, operating a site commonly known as "Erlanger Hospital," and doing business as Erlanger Health Systems, in Hamilton County, Tennessee.

**The Parties:**

8. At all times relevant to this cause of action, plaintiff was a citizen of the United States in the custody of the federal government serving a prison sentence for a conviction pursuant to a guilty plea before the Hon. Alan Edgar in the US District Court for the Eastern District of Tennessee. In addition, plaintiff was a patient of the medical staff of Erlanger and in the care of the medical staff of Erlanger.

9. At all times relevant to this cause of action, the City is a political sub-division of the State of Tennessee organized and existing under the laws of the State of Tennessee.

a. The City finances its law enforcement department and provides rules and regulations for the operation of the department.

b. The City provides oversight of the hiring, training, discipline, and retention of all personnel in its law enforcement department.

10. Specifically, and at all times relevant to this cause of action, the City is responsible for the creation and maintenance of its police department, which is a law enforcement agency created under Tennessee state law and regulated by the laws of the State of Tennessee as to:

a. The training and certification of its law enforcement employees;

$\sim 4 \sim$

b.   The safe confinement and treatment of prisoners placed within the custody of its individual officers and agents;

c.   To create rules and regulations to properly identify officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and the City on notice of officers who are a threat to citizens within its jurisdiction;

d.   To create rules and regulations to properly investigate officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and the City on notice of officers who are a threat to citizens within its jurisdiction; and

e.   To not hire, retain, re-hire, or promote police officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and the City on notice of officers who are a threat to citizens within its jurisdiction.

11.   At all times relevant to this cause of action, the individually named officers, and the unidentified and unknown City officers, were employed by the City and acted under the color of law, statute, ordinance, regulation, custom, or usage. In addition:

a.   At all times relevant to this cause of action, the individually named officers, and the unidentified and unknown City officers, acted in their official capacities as agents, servants, and employees, as defined under TENN. CODE ANN. § 29-20-102, for the City. Plaintiff sues these defendants in their individual and official capacities.

~ 5 ~

12.     At all times relevant to this cause of action, Chattanooga-Hamilton County Hospital Authority ("Erlanger") is a governmental entity created by the legislature of the State of Tennessee through Private Acts that established Erlanger. The City and Hamilton County mayors, along with a Chancellor of the Chancery Court for Hamilton County appoint a Board of Trustees to oversee the governmental activities of Erlanger.

a.     Erlanger provides policies and oversight of the implementation of its policies to ensure its employees protect the welfare of its patients and to follow state law created to ensure the welfare of its patients.

**Factual Basis of Amended Complaint:**

13.     On June 14, 2012, plaintiff was an inmate of the U.S. Bureau of Prisons ("BOP") housed at the BOP Residential Re-Entry Facility commonly known as "the Salvation Army" ("facility") located on McCallie Avenue in the City of Chattanooga corporate limits.

14.     Plaintiff was engaged in a conversation with his friend, Adrian McGhee ("McGhee") in a front lobby area of the facility.

15.     A staff member of the facility became alarmed at the conduct of plaintiff.

a.     However, several people walked by McGhee and plaintiff without a show of fear or alarm or even paid McGhee and plaintiff any attention.

16.     The staff member contacted the City and asked for police to come to the facility.

17.     Defendants Sean Emmer ("Emmer") and James Smith ("Smith") arrived.

18.     Plaintiff and McGhee walked away from Emmer and Smith.

19.     Without warning, Emmer came up to and behind plaintiff and placed a violent choke-hold on plaintiff, thereby causing plaintiff to begin to lose his ability to breathe and to pump blood to his brain.

~ 6 ~

20.     Emmer is a very large man, while plaintiff was much smaller.

21.     Emmer and Smith threw plaintiff to the floor and landed on top of plaintiff, forcing the wind from plaintiff's lungs and furthering impeding his ability to breathe.

22.     Within seconds, Emmer and Smith stood up and opened their metal batons.

23.     Plaintiff remained on the floor and on his back.

24.     Emmer and Smith began to beat plaintiff with the opened metal batons on plaintiff's legs, arms, and torso as plaintiff tried to block the blows with his arms and legs.

25.     Within seconds of the beating, Emmer inflicted a compound or open fracture of plaintiff's left leg thereby causing plaintiff to spurt blood from the open fracture all about the lobby.

     a.     Emmer and Smith were directly and proximately responsible for the six fractures of plaintiff's right leg and the two fractures (one a compound or open fracture) of the plaintiff's left leg and for the numerous bruises and soft tissue injuries on plaintiff's body.

26.     Emmer and Smith continued to rain blows on plaintiff as plaintiff remained on his back while trying to fend off the blows with his arms and legs.

27.     The number of blows was well in excess of one hundred for Emmer and well over one hundred for Smith.

28.     Defendant Adam Cooley ("Cooley") entered the lobby while Emmer and Smith continued to beat plaintiff in the manner as stated.

29.     Cooley straddled over plaintiff, bent over, and with closed fists, punched plaintiff's face and head.

~ 7 ~

30. Cooley struck plaintiff's face and head in excess of fifteen times, which constituted deadly force and upon which Cooley later admitted as such to City officials.

a. Cooley's actions were the direct and proximate cause of further injuries to plaintiff.

31. Emmer and Smith continued to rain blows upon plaintiff with their batons.

32. All during the beating, plaintiff continued to bleed from his open fractured leg.

33. The unidentified and unknown defendant officers arrived.

34. At one point, the officers handcuffed plaintiff and forced plaintiff to walk on his fractured legs for a distance of about one hundred feet, and forced plaintiff to the ground.

35. The officers on the scene stood in a semi-circle around plaintiff as he bled from his wounds.

36. Throughout the time plaintiff sat outside, many more officers walked all about the lobby, stepping in blood and contaminating the scene of its evidentiary value.

37. One of the unidentified and unknown officers wore sergeant's chevrons on his sleeve.

38. This "sergeant" did nothing to preserve the scene in the lobby.

39. At no time did any officer take steps and measures to preserve and protect the scene in the lobby.

40. Two of the officers picked up items from the floor of the lobby after they donned rubber gloves.

41. One officer picked up a knife and folded it.

a. This knife was never placed into evidence storage or mentioned in any official City report.

$\sim 8 \sim$

b.    Rather, the knife was mentioned in a BOP report, and the same report indicated that a City officer picked up a knife and folded it.

c.    The same officers, including a person believed to be Smith, began to clean the blood.

42.    Plaintiff's blood nearly covered the entire floor of the lobby.

43.    While awaiting EMS to treat plaintiff, plaintiff continued to remain surrounded by the officers, continued to bleed and continued to suffer.

44.    Plaintiff struggled to sit up onto his buttocks and then sat with his feet flat on the ground and his knees bent.

45.    Emmer kicked plaintiff in his legs and chest so hard as to cause plaintiff to roll back onto his back, and Emmer then stood over plaintiff.

46.    Plaintiff had been and remained handcuffed with his hands behind his back, and plaintiff offered no threat to anyone while he was so handcuffed, seated, and crippled.

47.    At no time did any officer on the scene attempt to stop Emmer from kicking plaintiff or to remove Emmer from plaintiff, or render first aid to plaintiff.

48.    EMS arrived, and with one of the officers, took plaintiff to Erlanger.

49.    Plaintiff remained guarded by Emmer, Smith, Cooley and defendant Joseph Neighbors ("Neighbors").

50.    Erlanger medical staff was aware that the officers inflicted severe injuries upon plaintiff.

51.    Erlanger staff failed to report the injuries and their understanding of the mechanism of the injuries to TBI or to the Hamilton County Sheriff.

a. Erlanger had a mandatory duty to report to law enforcement injuries that resulted from criminal activity pursuant to TENN. CODE ANN. § 38-1-101.

b. Erlanger does not have immunity for its failure to report.

52. While plaintiff remained hospitalized at Erlanger, one of the defendant officers whom plaintiff believes was Smith, entered his room and began to question plaintiff about the incident at the facility.

53. At no time did the officer give plaintiff "Miranda" warnings or allow him the opportunity to obtain counsel.

54. Plaintiff was still in custody of the City, for they continued to have officers guard plaintiff.

55. At no time did Erlanger staff or anyone from the City take any steps to remove Emmer, Smith, or Cooley from plaintiff while plaintiff was in any room or seek to have other law enforcement officers other than the officers directly involved in this incident to guard plaintiff while plaintiff was in the medical care of Erlanger.

a. The actions of the officers placed plaintiff in reasonable fear of further injury (with impunity) in the hands of the persons left to guard the plaintiff.

b. As a patient of Erlanger, plaintiff had an expectation that Erlanger would take steps to ensure he did not continue to endure mental anguish at the hands of the very people who inflicted the severe injuries upon his body.

c. Erlanger has a duty of care to ensure plaintiff was not harmed by anyone while in its care.

d. Erlanger breached that duty by its failure to protect plaintiff when it took no action to by remove or replace the officers who inflicted the injuries from plaintiff.

~ 10 ~

e. Erlanger had armed and trained guards ready to guard the plaintiff, and Erlanger failed to use that resource to guard plaintiff.

56. Neighbors authored the official police reports and the affidavit of complaint to falsely claim plaintiff attacked Emmer and Smith in order to justify the brutality of the beatings.

57. Several days later, defendant Mike Wenger ("Wenger"), acting as a police detective, also authored official police reports and an additional affidavit of complaint to falsely claim plaintiff was the aggressor in order to justify the brutality of the beatings.

58. At all times during the events herein described the individual officers were engaged in a joint venture. The officers assisted each other in performing the various acts described and lent their physical presence and support in performing their various actions as described and lent the authority of their respective offices to each other during the said events.

**City's Liability:**

59. The City has a pattern of overlooking or providing excuses and reasons to justify the misconduct of its officers in order to retain, promote, and/or re-hire officers.

a. The City, through its police command officers, refused to relieve former assistant police chief Jeanie Snyder of all duties after three much publicized events wherein [1] she appeared under the influence while armed and in a Gwinnett County, Georgia mall whereupon City police officers drove to said county and took Snyder back to Tennessee; [2] was wandering about in a Marion County wood which required a large law enforcement response to find her at much costs to the Tennessee taxpayers; [3] found unconscious at her home due to prescription drug use after she failed to report for a staff meeting.

b.     The City refused to follow the recommendations of its own Internal

Affairs unit to discipline Captain Edwin McPherson for untruthfulness after the

investigators found McPherson took actions to interfere with a murder

investigation that involved his niece as a suspect. The City's command

"cleared" McPherson without review by an entity outside of the police

department.

c.     The City refused to fire Detective Karl Fields after he made false claims

that he was a victim of a carjacking in order to cover up that he wrecked his car

while drunk and shooting his gun. The City allowed Fields to remain as a

homicide investigator, despite his obvious deceit that could have caused an

innocent person to be charged with carjacking.

d.     The City fired, then, rehired officer Steven Campbell for his part in the

infamous beating of two handcuffed suspects in the parking lot of Kanku's gas

station, which resulted in a settled federal lawsuit this Court in McCallum and

Jones v. City of Chattanooga, et al . The City later assigned Campbell to the S.W.A.T

team for the City and assignment as an investigator/detective.

e.     The City suspended, but did not fire defendant Wenger for his unlawful

assault of one of the two men in the aforesaid Kanku's incident which resulted in

Trent Jones' receiving a facial fracture. Rather than fire Wenger, the City

later promoted Wenger to a detective position, and eventually assigned Wenger to

handle the investigation of this incident.

f.     The City refused to fire former detective Kenneth Freeman for his video-

recorded assault of a 71 year old greeter at Wal-Mart, which resulted in in Walker

v. City of Chattanooga in this court. The video also captured Freeman shoving a person who came to the aid of the greeter through a glass door. Edwin McPherson was present and stood by. Despite the clear video evidence of the assault, and video evidence of Freeman assaulting an attorney in the Hamilton County Courthouse, the City allowed Freeman to remain a detective. Freeman had a long history of citizen and internal complaints that placed the City on notice of his propensity for misconduct. Despite the long history and the video evidence of assault on two persons at Wal-mart and the attorney (Lloyd Levitt), it wasn't until a non-video recorded claim of domestic assault against Freeman arose that the City finally terminated Freeman's employment. The City never took action to address McPherson's failure to render aid to the greeter or to stop Freeman from injuring the greeter.

g.      The City fired officers Steven Miller and Daniel Gibbs for macing then placing a homeless man, Robert Williams ("Williams"), in the trunk of Gibbs' police car and transporting Williams to Camp Jordan Park in East Ridge, where the officers left Williams by the side of the road. Despite firing these two officers for excessive force and lying about the incident the City rehired allowed these two officers to return to their employment as police officers.

h.      The City will not take action against its officers for misconduct unless such action has overwhelming evidence. Including the video-recorded incidents stated herein, the City took action against Officer David Campbell only after video evidence showed Campbell abusing William Boston.

i.      The City routinely refuses to allow litigants to review the complete closed files of internal affairs investigations to determine what percent of

complaints by citizens against officers involved use of force. In <u>Luther v. City of Chattanooga</u>, filed in this Court in case number 1:12-cv-00345, the City did sustain a violation of "improper procedure" against defendant Blumenberg, but cleared him of excessive force. A finding of excessive force carries greater liability under § 1983, and the City has used findings of non-excessive force misconduct in past force and arrest incidents in the following matters (stated above): Steven Campbell; David Campbell; and Blumenberg.

j.      The City gave praise to Cooley while clearing him of excessive force complaints prior to the incident described in this Complaint.

k.      The City was aware of numerous excessive force complaints against Emmer, but cleared him each time and allowed him to remain on full duty despite the City's own internal affairs office "flagging" Emmer as a result of the numerous excessive force complaints.

l.      CPD Sgt. D. Turner ("Turner"), was the supervisor of Cooley, Smith, and Emmer. The City requires its officers to write use of force reports whenever its officers use force on a suspect. Since Turner became the supervisors for Cooley, Smith, and Emmer, his shift saw a large increase in the use of force. This high and sudden rise in the use of force, coupled with the "flag" placed upon Emmer, put the City on notice that its officers were not properly supervised and trained, and thus constituted deliberate indifference that was the direct and proximate cause of plaintiff's injuries.

m.      The City had possession of the video of the incident at the facility since June 2012, and despite having this overwhelming evidence, allowed Emmer,

Smith, and Cooley to remain on full duty as police officers. Not until plaintiff made an internal affairs complaint in September 2012 and not until the City obtained a conviction of plaintiff for assault in July 2012 after withholding the entire video evidence from plaintiff's defense counsel (Mike Acuff) did the City take action against Emmer and Cooley in the form of termination of employment.

n.     Despite the overwhelming video evidence, the City has yet to take action against Smith, and as far as plaintiff is aware, Smith remains on full duty.

60.     The failure of the City's highest ranking police officers to remove officers from duty when they exhibit gross misconduct, exhibit odd behavior, and allow officers fired to later return to their jobs or even promote them later constitutes a deliberate indifference to the public at large and created the atmosphere that allowed the defendants in the case at bar to believe their conduct would go unpunished and was the direct and proximate cause of plaintiff's injuries.

a.     Such conduct by the City through its police command ranks establishes the City cares more about its officers than the public at large, even when its officers persist in conduct that reflects inability to perform duties, and malfeasance of performance.

b.     Such conduct by the City through its police command ranks establishes the City cares more about its officers than the public at large, despite recommendations for discipline by its own police personnel tasked with investigating police misconduct.

c.     Such conduct by the City through its police command ranks establishes the City allows "procedures" to clear officers charged with misconduct that are

solely in the hands of the police command rank officers, and is tantamount to a sham of internal oversight of its police personnel.

61.    The City's training in the use of force continuum and its procedural policies do not mirror one another. The conflicts of the training and policies on the use of force created an ambiguity that took the supervisory and training obligations from the City and placed them in the hands of individual officers. Such lack of oversight constitutes the deliberate indifference of the City and was the direct and proximate cause of plaintiff's injuries.

## Count One:
## Violation of Civil Rights Under
## Color of Law 42 U.S.C. §1983

62.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Plaintiff reasserts and incorporates ¶¶ 1 through 61.

63.    The force used by the officers amounted to unlawful force that carried a high risk of causing serious bodily harm and death, was unnecessary and unreasonable under the circumstances and was the direct and proximate cause of Plaintiff's injuries, needless suffering, and loss of enjoyment of life. No reasonable officer would have acted as Emmer, Cooley, and Smith, and no reasonable officers would have acted in the manner stated in this Complaint.

64.    The City did not take action against Emmer, Cooley, and Smith despite the overwhelming evidence until plaintiff was able to make a written complaint, months later from jail. Even then, the City has failed to take any action against Smith.

65.    The officers acted under color of law and their negligence and intentional acts deprived the plaintiff his rights secured to him under the United States Constitution to be free from:

a.       Unreasonable seizures of persons, property, and effects, without due process of law.

b.       The right to seek redress of the defendants' conduct by petitioning the government.

c.       The right to remain silent and to be allowed an attorney during interrogation.

d.       The right to the Due Process of law by having the **ENTIRE** video of the incident delivered or reviewed by plaintiff's criminal defense attorney, Mike Acuff.

e.       The right to be free from cruel and unusual punishment.

66.       The City had a duty of care to the plaintiff to ensure that is agents were properly trained in the use of force, to train its sworn officers to report officer abuse of suspects, to train and ensure its supervisors do not overlook sudden rises in the use of force by its police officer employees, and to prevent officer abuse of suspects. This failure constitutes deliberate indifference by the City and was the direct and proximate cause of plaintiff's injuries.

67.       The City had a duty to properly supervise its officers and to ensure its supervisory officers do not condone unnecessary force by officers in their dealings with the public. This failure constitutes deliberate indifference by the City and was the direct and proximate cause of plaintiff's injuries.

68.       The City had a duty to properly investigate and remove officers who display erratic behavior, unwarranted aggression towards citizens, and who concoct and fabricate false police reports that may have led to the prosecution of an innocent man. This failure constitutes deliberate indifference by the City and was the direct and proximate cause of plaintiff's injuries.

69.       Consequently, the actions stated in this Complaint created an environment that allowed the defendant officers to believe that abusive behavior would not be properly monitored,

investigated, nor punished. Or if punished, done so lightly or, if terminated, would get re-hired at a later date. This failure constitutes deliberate indifference by the City and was the direct and proximate cause of plaintiff's injuries.

      70.    Plaintiff avers that such actions and omissions on the part of all the defendants constitute a violation of § 1983 and were done to deprive the Plaintiff of the following rights established under the United States Constitution:

      a.    The right to be free from unreasonable seizures secured to him by the Fourth and Fourteenth Amendments;

      b.    The right not to be deprived of life, liberty or property without Due Process as secured to him by the Fourteenth Amendment.

      c.    The right to Due Process during the false prosecution and to not hide exculpatory evidence from plaintiff and plaintiff's criminal defense counsel.

      d.    The right to petition the government without the encumbrance of a criminal conviction aided by the district attorney, which could estop plaintiff from prevailing in a suit such as this.

      e.    The right to counsel during interrogation and to remain silent during interrogation.

      f.    The right to be free from the infliction of cruel and unusual punishment without the Due process of Law.

      71.    The actions of the officers were done with actual malice toward the Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of the Plaintiff. Thus the Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

72.     The omissions of the City constitute deliberate indifference toward the Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of the Plaintiff. This failure constitutes deliberate indifference and was the direct and proximate cause of plaintiff's injuries. Thus the Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

## Count Two:
## Negligent Supervision

73.     Plaintiff incorporates fully all averments stated in this Complaint as if fully set out herein and avers that such actions and omissions on the part of the officers and the City constitutes a violation of this common law of Tennessee.

## Count Three:
## Negligent Retention

74.     Plaintiff incorporates fully all averments stated in this Complaint as if fully set out herein and avers that such actions and omissions on the part of the officers and the City constitutes a violation of this common law of Tennessee. Specifically, the City retained Emmer and Cooley despite the City's full knowledge of the amount of citizen complaints lodged against these two defendants. The City has failed to terminate the employment of Smith, despite the overwhelming video evidence of his misconduct.

## Count Four:
## Common Law Assault

75.     Plaintiff incorporates fully all averments stated in this Complaint as if fully set out herein and avers that such actions and omissions on the part of the officers and the City constitutes a violation of this common law of Tennessee.

## Count Five:
## Common Law Battery

76.   Plaintiff incorporates fully all averments stated in this Complaint as if fully set out herein and avers that such actions and omissions on the part of the officers and the City constitutes a violation of this common law of Tennessee.

## Count Six:
## Common Law
## Negligence– Erlanger

77.   The failure of Erlanger to perform its mandatory duties allowed the defendant officers to continue to inflict injury to plaintiff. Specifically, to allow the same officers and department to guard plaintiff allowed the officers to intimidate and further deprive plaintiff of his constitutionally protected rights.

## Count Seven:
## Common Law
## Negligence per se
## – Erlanger

78.   The failure of Erlanger to perform its mandatory duties allowed the defendant officers to continue to inflict injury to plaintiff. Specifically, to allow the same officers and department to guard plaintiff allowed the officers to intimidate and further deprive plaintiff of his constitutionally protected rights.

## Count Eight:
## Intentional infliction
## of emotional distress

79.   As to all the individual defendants, Plaintiff incorporates fully all averments stated in this Complaint as if fully set out herein and avers that such actions and omissions on the part of the officers in their individual capacities constitutes a violation of this common law of the State of Tennessee.

## Count Nine:
## Negligent infliction
## of emotional distress

80.     As to all the individual defendants, Plaintiff incorporates fully all averments stated in this Complaint as if fully set out herein and avers that such actions and omissions on the part of the officers in their individual capacities constitutes a violation of this common law of the State of Tennessee.

## Count Ten:
## Common law negligence

80.     As to all the individual defendants, Plaintiff incorporates fully all averments stated in this Complaint as if fully set out herein and avers that such actions and omissions on the part of the officers in their individual capacities constitutes a violation of this common law of the State of Tennessee. Specifically, the officers failed to prevent the continued harm of the plaintiff while at the facility and at Erlanger.

**W** HEREFORE, the plaintiff demands judgment against the defendants and requests the following relief:

A.     The Court to award compensatory damages in the amount of TWENTY MILLION DOLLARS ($20,000,000) and punitive damages in the amount of THIRTY MILLION DOLLARS ($30,000,000);

C.     That the Court award attorney's fees;

D.     That the Court award costs, and discretionary costs;

E.     Any other relief the Court may deem fit and proper;

F.     Any other relief the Court may deem fit and proper pursuant to 42 U.S.C. §1988, and

G.     Allow a jury trial on all issues.

Respectfully submitted,

By: _____

**ROBIN REUBEN FLORES**
TENN. BPR #20751
GA STATE BAR #200745
**MIKE RAULSTON**
TENN. BPR #1845

Attorneys for Plaintiff
4110-A Brainerd Road
Chattanooga, TN 37411
423 / 267-1575  fax 267-2703
robinflores@comcast.net